LaCorte, Bundy, Varady & Kinsella
989 Bonnel Court
Union, New Jersey 07083
(908) 810-0500
Attorneys for Plaintiff, Kathleen Prevost, Executrix of the Estate of Robert Prevost

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHLEEN PREVOST, EXECUTRIX OF THE ESTATE OF ROBERT PREVOST<br><br>Plaintiff,<br><br>vs.<br><br>TOWNSHIP OF MIDDLETOWN, TOWNSHIP OF MIDDLETOWN POLICE DEPARTMENT, ROBERT MORRELL, individually and in his official capacity as police officer of the Township of Middletown Police Department, ROBERT OCHES, individually and in his official capacity as police chief of the Township of Middletown Police Department,  JOHN DOES 1-20, a fictious name for presently unknown agents, members, commissioners, chiefs<br><br>Defendants. | Civil Action No.:<br><br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, Kathleen Prevost, Executrix of the Estate of Robert Prevost, deceased, residing at 337 Oakland Avenue, Belford, New Jersey, in the County of Monmouth, and State of New Jersey, by way of Complaint says that:

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 1343, under 42 U.S.C. 1983, under 28 U.S.C. 1367, 1331, and 42 U.S.C.A. 41201 et. seq.  This action arises under the United States and New Jersey Constitutions, and under New Jersey common law.  This action seeks redress for violations of federal constitutional law and pendent state constitutional and common law claims.

1

## NATURE OF ACTION

2.      This is an action for compensatory and punitive damages for violation of plaintiff's decedent's constitutional and civil rights, wrongful arrest, malicious prosecution, negligent and intentional infliction of severe emotional harm, violations of the Americans with Disabilities Act, and the New Jersey Law against Discrimination, the New Jersey Civil Rights Act, and for wrongful death.

## PARTIES

3.      Plaintiff's decedent was a citizen of the United States and resident of Middletown Township in Monmouth County, New Jersey.

4.      Defendant, Township of Middletown (the "Township"), is and was at all times relevant to this complaint, a municipality organized under the laws of the State of New Jersey.

5.      Defendant, Township of Middletown Police Department (the "Police Department"), was and at all times relevant to this complaint a division or department of the Township entrusted with certain responsibilities among others, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of the people and property found within the jurisdictional limits of the Township.

6.      Defendant, Robert Morrell ("Lt. Morrell"), was a municipal employee in the position of police lieutenant for the Police Department.

7.      Defendant, Robert Oches, is a municipal employee in the position of police chief for the Police Department.

8.      John Does 1-20 are fictious names for any and all presently unknown persons who were at all times relevant to this complaint, agents, representatives, and/or employees of the Police Department, who were involved or in any way responsible for the events described in this complaint. They are being sued both individually and in their official capacities.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

9.      The decedent, Robert Prevost, was born on March 23, 1966.

10.      Diagnosed as a child with Attention Deficit Disorder (ADD) and raised in a home with an abusive, alcoholic father, decedent struggled academically, quitting high school in the tenth grade.

11.      The decedent and plaintiff were married on June 30, 1990.  Two children were born of the marriage, Robert, born May 13, 1988, and Joseph born January 11, 1995.  Decedent also adopted plaintiff's son James, born to plaintiff November 16, 1985, from a prior relationship.

12.      From on or about 1992 through 1998 decedent struggled with cocaine addiction.

2

13.    In 1998, following a hospitalization for cocaine dependence, with the help of several drug interdiction organizations and the love and support of his family and friends, decedent conquered his drug dependency. From 1998 to the date of his death on November 2, 2005, decedent lived clean and sober as a recovering addict.

14.    His personal resurgence led decedent to become deeply involved in community service in the Township. While operating his own carpet installation business, decedent also coached local youth sports teams and devoted countless hours to the cause of drug abuse prevention and education. In 2000, he was recognized by the Middletown Municipal Alliance for the Prevention of Alcohol and Drug Abuse, and received an award for sharing his personal message of recovery and hope with the residents of the Township, both young and old.

15.    In furtherance of decedent's desire to serve the citizens of the Township, he completed a rigorous law enforcement training program and on or about February 2004 realized his dream of becoming an auxiliary police officer with the Township.

16.    Auxiliary officers are highly trained volunteers who serve the Township and the Police Department in a variety of police related tasks and who, during times of emergency, provide needed supplemental public police services and residents of the Township. Auxiliary officers are deployed to assist during parades, snow emergencies, funerals and street fairs.

17.    The Township is one of only two municipalities in the State of New Jersey that permit auxiliary officers to carry a weapon and, after completing an extensive firearms training program, decedent qualified to carry the Police Department issue Barretta 92-5 pistol which, pursuant to department regulation, decedent kept in a locker in the Police Department headquarters.

18.    Throughout the course of his tenure as an auxiliary police officer, decedent performed his duties in an exemplary manner, and enjoyed excellent performance evaluations as well as the admiration of his fellow officers.

19.    However, unlike most of decedent's colleagues who respected his accomplishments and held him in high regard, Lt. Morrell harbored a sinister dislike of the decedent and repeatedly and openly voiced his resentment that the decedent, a recovering addict, was allowed to serve as an auxiliary police officer.

20.    Lt. Morrell's deep and abiding animosity towards the decedent was well-known throughout the Police Department.

21.    From on or about February 2004 through November 2005, Lt. Morrell manifested his aversion to the decedent, a recovering drug addict, through a pattern and practice of discrimination and

by repeatedly demonstrating his open contempt of the decedent.  As a result of Lt. Morrell's actions, decedent became intimidated and fearful of Lt. Morrell and sought to avoid contact with him whenever possible.

22.     Decedent was not alone with respect to his fear of Lt. Morrell, who many fellow officers believed to be emotionally and mentally unstable.  Lt. Morrell's history of bizarre behavior was well-known to his fellow officers and superiors, including Chief Robert Oches.

23.     In April of 2002, during a dispute with four fellow officers, Lt. Morrell sent boxes filled with horse manure to their homes.

24.     In May of 2002, Lt. Morrell stalked and followed another fellow officer with whom he had a dispute.

25.     These and other actions were deemed so disturbing that a number of officers requested that internal affairs investigate Lt. Morrell's aberrant behavior.  Said officers also requested reassignment within the department so as to avoid all contact with Lt. Morrell.

26.     Upon information and belief, from 2002 through November 2005, administrators in the department, including Chief Robert Oches, were deliberately indifferent to numerous recurring complaints about Lt. Morrell and his increasingly obvious emotional problems.

27.     As a result, Lt. Morrell's seething, psychopathic hostility towards the decedent continued unchecked, culminating on November 2, 2005.

28.     On said date, decedent, in his position as auxiliary police officer, was assigned to crowd/traffic control at a funeral in the Township.

29.     Rather than following the custom and practice of reporting to the Police Department headquarters to obtain his weapon, decedent, fearful of contact with Lt. Morrell whom he knew to be on duty, dressed in his uniform at home and brought his own licensed weapon, a B92-5 Barretta pistol, identical to the Police Department issue, to his assignment at the funeral.

30.     While decedent was his post at the funeral, Lt. Morrell learned that the decedent was carrying his personal weapon rather than the Police Department issue which remained in his locker at headquarters.

31.     Upon learning of these facts, Lt. Morrell became enraged and, contrary to his superior's explicit instruction to handle decedent's negligible, unwitting rule infraction administratively, as a minor disciplinary matter, Lt. Morrell issued an all-points-bulletin ordering that the decedent be arrested and brought to the Police Department headquarters.

4

32.     On Lt. Morrell's orders, decedent was subsequently arrested by fellow officers and returned to headquarters in handcuffs.

33.     While in handcuffs, decedent was brought before Lt. Morrell, who stripped decedent of his shirt and gun belt and locked decedent in a holding cell known as the "cage." Thereafter, in a an ear-splitting, hysterical rage that could be overheard throughout headquarters, Lt. Morrell mercilessly berated, cursed and threatened decedent in a vile, malevolent manner.

34.     Further, without just cause, Lt. Morrell proffered indictable criminal charges against decedent for unlawful possession of a hand gun and ammunition. Bail was set at $7,500.00.

35.     Later that evening, the plaintiff posted bail and decedent was released to await formal prosecution.

36.     Several hours after his release, on the evening of November 2, 2005, decedent retired to his workshop where he wrote two poignant notes, one to his wife and the other to Lt. Morrell. Then, tragically, decedent ended his life with a single rifle shot to his head.

### FIRST COUNT

(Against Lt. Morrell, the Police Department
and Police Chief Oches)

### Wrongful Arrest, False Imprisonment and
### Malicious Prosecution

37.     Plaintiff repeats the allegations contained in Paragraphs 1-36 inclusive as set forth fully herein.

38.     On November 2, 2005, the defendants acting under color of state law, made a complaint of unlawful possession of a weapon and ammunition against the decedent.

39.     On November 2, 2005, plaintiff was arrested upon said charge and detained at the Police Department in a holding cell known as the "cage."

40.     The charge was false.

41.     Defendants made the charge from motives of malice and there was no reasonable or probable cause for the charges and decedent's arrest and detention.

42.     By reason of the unlawful detention of the decedent for a period of time he was deprived of his personal liberty.

43.     As a result thereof, the decedent suffered pain and anguish of mind, humiliation, emotional, mental, and psychological torment, and suicidal despair.

## SECOND COUNT

(Against Lt. Morrell)

### Intentional Infliction of Emotional Distress

44.     Plaintiff repeats the allegations contained in Paragraphs 1-43 inclusive as set forth fully herein.

45.     On November 2, 2005, the defendant, Lt. Morrell, acting under color of state law, deliberately, willfully, and maliciously acted in a shamefully shocking, egregious and outrageous manner towards the decedent with the deliberate intent of inflicting severe emotional distress.

46.     As a result thereof, the decedent suffered pain, humiliation, emotional, mental and psychological torment, and suicidal despair.

## THIRD COUNT

(Against all Defendants)

### Violation of Americans with Disabilities Act
### and New Jersey Law Against Discrimination

47.     Plaintiff repeats the allegations contained in Paragraphs 1-46 as set forth fully herein.

48.     Upon information and belief, defendants followed a policy and practice of discrimination against the decedent because of his physical disability and in violation of the Americans with Disabilities Act and the New Jersey Law Against Discrimination.

49.     Plaintiff was discriminated against due to his status as a recovering drug addict.

50.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act (ADA) and the New Jersey Law Against Disabilities (NJLAD) is a member of a protected group by virtue of his physical disability as a recovering drug addict.   Defendant is an employer within the meaning of the ADA and NJLAD.

51.     Plaintiff was the victim of discrimination, disparate treatment, harassment and was subjected to a hostile work environment due to his disability.

## FOURTH COUNT

(Against All Defendants)

### Wrongful Death

52.     Plaintiff repeats the allegations contained in Paragraphs 1-51 inclusive as set forth fully herein.

53.     As a result of defendant's intentional and outrageous conduct, decedent was caused to suffer severe emotional distress, mental anguish, and suicidal despair which directly caused him to

become dominated by a disturbance of mind of such severity as to override normal rational judgment, resulting in decedent's suicide.

54.     As a direct and proximate result of defendant's actions described above, prior to his death the decedent suffered great emotional and mental anguish, depression, despondency and despair.

55.     Decedent is survived by plaintiff, his wife, and three children who are entitled to take decedent's intestate personal property, and who have suffered pecuniary injury, including the loss of decedent's financial support, guidance and counsel as a direct and proximate result of decedent's death.

56.     On November 22, 2005, the Surrogate's Court of the County of Monmouth, issued letters appointing plaintiff general administrator of decedent's estate.  A copy of the letters appointing plaintiff general administrator of decedent's estate is attached and incorporated into this complaint by reference.

## FIFTH COUNT

(Against the Borough, Police Department,
Police Chief Oches and John Does 1-20)

### Negligent Hiring, Training, Supervision and Retention

57.     Plaintiff repeats the allegations contained in Paragraphs 1-56 inclusive as set forth fully herein.

58.     At no time either prior to employment of Lt. Morrell or assignment of his duties whereby it was foreseeable that Lt.  Morrell would be require to interact on a daily basis with members of the Department, did the defendants take reasonable steps to ascertain whether Lt. Morrell was emotionally capable of performing such duties and did not have a propensity towards violent, aberrant, or aggressive behavior against individuals he was likely to encounter in those settings.

59.     Defendants knew or should have known of Lt. Morrell's unstable, irrational state of mind during the years and months proceeding November 2, 2005, and despite said knowledge failed to take steps to discipline, retrain, reassign and/or terminate his employment or to compel Lt. Morrell to seek appropriate psychiatric care.

60.     As a direct and proximate result of the negligent hiring, training, supervision and retention of Lt. Morrell by the defendants which represent systematic failures that are customs and policies of the Township and the Police Department, decedent was subjected to the infliction of severe emotional distress at the hands of Lt. Morrell and suffered severe psychological injuries, great emotional stress and mental anguish, and suicidal despair which directly caused the decedent to

become dominated by a disturbance of mind of such severity as to override normal rational judgment and resulted in decedent's suicide.

## SIXTH COUNT

(Against All Defendants)

### 42 U.S.C. 41983

61.     Plaintiff repeats the allegations of Paragraph 1-57 inclusive as set forth fully herein. Defendants acting under color of state law, willfully, intentionally, knowingly and concertedly deprived plaintiff of his rights, privileges and immunities secured by the constitution of the laws of the United States of America, including the Fourth and Fourteenth Amendments, by inter alia:

a. Needlessly and unreasonably subjecting the decedent to wrongful discrimination, and harassment;

b. Wrongfully, and without probable cause, subjecting decedent to arrest, detention and prosecution;

c. Interfering with plaintiff's right to seek redress for injuries by attempting to cover up and conceal defendant officer's conduct;

d. Combining and conspiring to deprive decedent of his constitutionally protected rights;

e. Falsely, maliciously and without probable cause, prosecuting decedent;

f. Denying plaintiff due process of law;

g. Implementing and tolerating policies, practices, customs which resulted in the illegal actions and proximately caused plaintiff's injuries as hereto for alleged.

62.     These aforesaid violations are in violation of 42 U.S.C. § 1983 and the Constitution of the United States of America.

## PRAYER FOR RELIEF

63.     Plaintiff repeats the allegations of Paragraphs 1-62 inclusive as if set forth fully herein.

64.     Plaintiff demands judgment against all defendants and each of them, jointly and severely as follows:

a.     Where applicable, plaintiff demands judgment for compensatory damages.

b.     Where applicable, plaintiff demands judgment for punitive damages and exemplary damages, and any and all other damages allowed by law.

c.     Plaintiff demands judgment for all equitable and other relief as the Court deems just and proper.

d.     Plaintiff demands judgment of attorney's fees with interests and costs of suit.

LACORTE, BUNDY, VARADY & KINSELLA

By: _____
Robert F. Varady, Esq.

Dated: November 1, 2007

## **JURY DEMAND**

The plaintiff demands a trial by jury on all issues so triable.

LACORTE, BUNDY, VARADY & KINSELLA

By: _____
Robert F. Varady, Esq.

Dated: November 1, 2007

9